**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**EASTERN DIVISION**

**NATHANIEL HOWELL** **PLAINTIFF**

**V.** **CASE NO.: 2:11CV00147 BD**

**MICHAEL J. ASTRUE, Commissioner,**
**Social Security Administration** **DEFENDANT**

**MEMORANDUM OPINION AND ORDER**

Plaintiff Nathaniel Howell appeals the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his claim for Disability Insurance benefits ("DIB") under Title II of the Social Security Act (the "Act") and Supplemental Security income ("SSI") under Title XVI of the Act. For reasons that follow, the decision of the Commissioner must be REVERSED and REMANDED.

**I. Procedural History:**

On January 9, 2008, Mr. Howell protectively filed for SSI and DIB, alleging disability beginning April 12, 2006, due to gout, diabetes, problems in his shoulders, high blood pressure, vision problems, and mental health issues. (Tr. 43, 90-102) Mr. Howell's claims were denied initially and upon reconsideration. (Tr. 43-49, 52-55) At his request, an Administrative Law Judge ("ALJ") held a hearing on October 21, 2009, at which Mr. Howell appeared with his lawyer. (Tr. 23-36)

After the hearing, the ALJ sent written interrogatories to a vocational expert ("VE"). (Tr. 14) On March 16, 2010, the VE's interrogatory responses were provided to

Mr. Howell's attorney. (Tr. 14) In his opinion, the ALJ states that Mr. Howell's attorney did not respond to the VE's interrogatories; however, Mr. Howell's attorney provided the Appeals Council with a copy of a March 29, 2010 letter he sent to the ALJ enclosing additional interrogatories to be answered by the VE. (Tr. 14, 193-195) There are no responses to the interrogatories proposed by Mr. Howell's attorney in the record.

The ALJ issued a decision on June 17, 2010, finding that Mr. Howell was not disabled for purposes of the Act. (Tr. 14-22) On August 15, 2011, the Appeals Council denied Mr. Howell's request for review, making the ALJ's decision the Commissioner's final decision. (Tr. 1-6)

## II. Background:

Mr. Howell was forty-six years old at the time of the hearing. (Tr. 23, 204) He had graduated from high school and had past work as a van driver, tire repairer, Bobcat operator, and stocker. (Tr. 187) At the time of the hearing, he lived with his wife and his two adult children. (Tr. 29)

At the hearing, Mr. Howell testified about his kidney problems, gout, and arthritis pain. (Tr. 27) He stated he was on medication for high blood pressure and gout, took injections for his arthritis, and took hydrocodone for pain. (Tr. 27) He also testified to a frequent need to urinate both day and night. (Tr. 33)

## III. Discussion:

This Court must review the Commissioner's decision to determine whether there is substantial evidence in the record as a whole to support it. *Boettcher v. Astrue*, 652 F.3d 860, 863 (8th Cir. 2011); 42 U.S.C. § 405(g). Substantial evidence is "less than a preponderance, but sufficient for reasonable minds to find it adequate to support the decision." *Id*. (citing *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005)). The Court must consider both evidence that detracts from the Commissioner's decision and evidence that supports the decision; but, the decision cannot be reversed, "simply because some evidence may support the opposite conclusion." *Id*. (citing *Pelkey v. Barnhart*, 433 F.3d 575, 578 (8th Cir. 2006)).

The ALJ followed the required five-step sequence.[1] He determined that Mr. Howell had not engaged in substantial gainful activity since his alleged onset date, April 12, 2006.[2] (Tr. 16) He found that Mr. Howell had the following severe impairments: hypertension, diabetes mellitus, renal insufficiency, and depressive disorder; but he also found that Mr. Howell's ankle, shoulder, and vision impairments were not severe. (Tr.

[1]When performing the five-step analysis, and ALJ determines: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work ; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)-(g) (2005), 416.920(a)-(g) (2005).

[2]Mr. Howell met insured status requirements through March 31, 2010. (Tr. 16)

16-17) After determining that Mr. Howell did not meet any of social security's list of circumstances under which disability is presumed, see 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii), the ALJ was required to determine Mr. Howell's residual functional capacity ("RFC"). (Tr. 17-18)

In making the RFC determination, the ALJ had to consider "all of the relevant medical and other evidence." See 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). And he was required to consider Mr. Howell's own description of his pain and limitations. *Ford v. Astrue*, 518 F.3d 979, 981 (8th Cir. 2008)(citation omitted).

The ALJ concluded that Mr. Howell had the RFC to lift/carry 20 pounds occasionally and 10 pounds frequently; walk/stand and sit 6 hours in an 8-hour day; he could not reach overhead with his right upper extremity[3]; and he had moderate limitations in dealing with detailed instructions, maintaining attention and concentration for extended periods, completing a normal work day and work week without interruptions from mental symptoms, performing at a consistent pace without an unreasonable number or length of rest periods, and interacting with the public. The ALJ concluded that Mr. Howell could

[3]In what appears to be a contradiction, the ALJ concluded the medical evidence did not show "any sustained problem that would result in a severe shoulder impairment," but then determined that Mr. Howell's RFC should preclude overhead reaching with the right upper extremity. (Tr. 17) The job of fast food worker, which the VE responded that Mr. Howell could perform requires constant reaching and the job of housekeeper requires frequent reaching. Employment and Training Admin., U.S. Dep't of Labor, *Dictionary of Occupational Titles* (4th ed. rev. 1991). It is unclear how the VE resolved this apparent discrepancy to conclude that someone with Mr. Howell's reaching limitation was capable of performing these jobs.

not perform his past relevant work. (Tr. 21) Relying on the interrogatories answered by the VE (Tr. 186-89), he found, however, that Mr. Howell had the residual functional capacity to perform jobs that existed in significant numbers in the national economy, including the jobs of fast-food worker and cleaner/housekeeper. (Tr. 22)

Mr. Howell contends that he is disabled due to a combination of impairments, including hypertension, gout, diabetes, renal insufficiency, obesity, ankle pain, shoulder pain, and depression. He testified that on his last job, which he held for over three years, he drove a van for an area health agency driving patients to medical appointments. In this job, he was sometimes required to lift passengers out of the van. He testified that he was terminated from his job when he could no longer perform his job duties because of problems with his back, shoulders, and gout. (Tr. 26, 34-35)

He also testified that his health had deteriorated further since he was terminated from his job. His primary care doctor had advised him not to do any strenuous lifting. His diabetes and hypertension were not well controlled; and due to back pain he could not stand at the sink long enough to wash dishes. (Tr. 28-30)

Mr. Howell challenges the ALJ's decision not to fully credit his complaints of pain. Under *Polaski v. Heckler,* 739 F.2d 1320, 1321–22 (8th Cir. 1984), an ALJ cannot simply reject complaints of pain because they were not supported by objective medical evidence. Instead, the ALJ must fully consider all evidence relating to the subjective complaints, including the claimant's work record and observations of the claimant by

others (including treating and examining doctors) as to matters such as his daily activities; the intensity, duration, and frequency of his pain, and the conditions causing and aggravating the pain; and his functional limitations. *Id.* The ALJ had to consider these matters, but did not have to discuss each one of them. And he was permitted to discount complaints that were inconsistent with the evidence as a whole. *Ford*, 518 F.3d at 982 (citation omitted). When discounting Mr. Howell's complaints, however, the ALJ was required to "detail the reasons for discrediting the testimony and set forth the inconsistencies found." *Id*. (quoting *Lewis v. Barnhart,* 353 F.3d 642, 647 (8th Cir. 2003)).

Here, the ALJ did not properly analyze Mr. Howell's credibility under *Polaski*. As an initial matter, the ALJ did not even cite to *Polaski*. While this omission alone does not justify a remand, the ALJ's failure to cite *Polaski* or the *Polaski* factors indicates that he did not seriously consider those factors. See *Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007) (holding that citing to *Polaski* is the "preferred practice").

Further, the ALJ based his credibility determination solely on the lack of objective medical evidence. In his opinion, the ALJ points to only two factors as the basis for his credibility determination. He cites the lack of medical evidence to support Mr. Howell's claims of vision problems. Next, he notes the lack of medical evidence to support the opinion of Mr. Howell's primary care physician that Mr. Howell was disabled. (Tr. 21)

Both of the ALJ's stated reasons for discrediting Mr. Howell's credibility rely on a lack of objective medical evidence. There is no indication in the ALJ's opinion that he considered the other *Polaski* factors in determining Mr. Howell's credibility. Further, as set forth below, substantial evidence in the record contradicts the ALJ's reasons for discrediting Mr. Howell's testimony.

On May 8, 2008, Mr. Howell's eyes were examined by W.R. Frederick, M.D. Dr. Frederick assessed that Mr. Howell's visual acuity without correction was 20/100 in both eyes at near distance and 20/400 in both eyes at distance. (Tr. 292) Dr. Frederick noted that Mr. Howell's visual fields were severely restricted, a condition which, he stated, "was not consistent with [his] navigation through the office." (Tr. 292) He diagnosed unknown visual loss "not consistent with objective findings." (Tr. 292) He suggested a neuro-ophthalmic evaluation to rule out pathology that could be causing the decrease in vision. (Tr. 292) Based solely on Dr. Frederick's assessment, the ALJ concluded that Mr. Howell did not have a medically determinable visual impairment and that his complaints of pain were not credible.

There is, however, substantial evidence in the record contrary to the ALJ's conclusion. Sudhir Kumar, M.D., examined Mr. Howell on behalf of the Commissioner on May 9, 2008. Dr. Kumar also found that Mr. Howell's central visual acuity was 20/100 in both eyes uncorrected. Dr. Kumar diagnosed diabetic retinopathy, which is consistent with Mr. Howell's complaints of uncontrolled diabetes. (Tr. 297)

Additionally, at the hearing, the ALJ asked Mr. Howell about his appointment with Dr. Frederick. Mr. Howell testified that he was doing his best during the exam. (Tr. 31) He also testified that sometimes his high blood pressure affected his vision, and noted one instance where his blood pressure had been so high at the doctor's office that he could not see and was unable to drive home. (Tr. 28) There is substantial evidence in the record to support Mr. Howell's allegations of vision problems.

The ALJ's other stated reason for finding Mr. Howell not credible was the lack of objective medical evidence to support the opinion of George L. Conner III, M.D., Mr. Howell's primary care physician. On April 30, 2009, Dr. Conner wrote a letter stating that he was treating Mr. Howell for hypertension, diabetes, and chronic renal insufficiency. Additionally, he noted that Mr. Howell was being treated at Mid-South Nephrology Consultants by Dr. Deogaygay for his renal disease. (Tr. 346) On October 9, 2009, Dr. Conner wrote a letter stating he had diagnosed Mr. Howell with severe chronic renal failure, difficult-to-control hypertension, and diabetes which was also difficult to control. He stated that he would consider him disabled. (Tr. 398)

In a Physical Residual Functional Capacity Questionnaire completed on April 2, 2008, Dr. Conner stated that medications had not kept Mr. Howell's gout, arthritis, or hypertension well controlled. He noted that Mr. Howell had ankle pain, was unable to stand or walk for long periods or distances, and when working could not stand for an entire shift. (Tr. 286) He noted that, on examination, Mr. Howell had tenderness and

edema of the ankles. (Tr. 286) He stated that Mr. Howell's pain would frequently interfere with the attention and concentration needed to perform work tasks, but that he might be able to perform a low-stress, sedentary job. (Tr. 287)

Contrary to Dr. Conner's reports, the ALJ states that Mr. Howell's hypertension was under "variable control." The ALJ went on to note, however, many instances in the medical records showing that Mr. Howell's blood pressure readings ranged from normal to very high. (Tr. 19)

The ALJ notes that Mr. Howell's medical records corroborate Dr. Conner's statement that he was treated by Bernadette Deogaygay, M.D., for renal insufficiency due to diabetes and hypertension (Tr. 347); but he concludes that Mr. Howell's renal insufficiency did not cause any limitation because Dr. Deogaygay did not report that Mr. Howell was "disabled due to this impairment." (Tr. 19)

The ALJ also concluded that Mr. Howell's frequent need to urinate occurred only at night. (Tr. 19) This is contrary to Mr. Howell's testimony and his reports to examining physicians. (Tr. 33-34, 204) He testified that the frequent need to urinate affected him during the day as well as at night. (Tr. 33-34) In fact, Mr. Howell required a bathroom break during his 19-minute hearing before the ALJ. (Tr. 25, 30, 36)

Mr. Howell also testified that he had been cleared for dialysis to treat his renal failure. (Tr. 27) In a letter, which was part of the record before the Appeals Council, Mr. Howell's counsel confirmed that Mr. Howell began dialysis for his renal failure shortly

after the ALJ's decision. (Tr. 10, 27) There is substantial evidence supporting Mr. Howell's claim that his chronic renal failure would affect his ability to perform light work.

There is also substantial evidence in the record to support Mr. Howell's claims of right shoulder and ankle pain that would impair his ability to perform light work.
A July 10, 2006, an MRI of Mr. Howell's right shoulder showed moderately severe degenerative joint disease of the acromioclavicular joint with some impingement upon the supraspinatus musculotendinous junction. (Tr. 282)

Mr. Howell reported to Forrest City Medical Center on April 4, 2007, complaining of gout pain in his left ankle. He was without medication. He was diagnosed with gout, treated with medication, and instructed to apply heat and to elevate his ankle. (Tr. 423, 427)

On April 27, 2007, Mr. Howell was examined by Akhilesh Rao, M.D., at the Commissioner's request. (Tr. 203) Mr. Howell reported that he had suffered from gout for 7-8 years, but that it had been flaring up for the past 3-4 months. He stated that he took medicine for gout, but continued to have pain in his ankles all of the time. He stated that he frequently had to go to the bathroom. Mr. Howell also complained of joint pain and right shoulder pain. (Tr. 204)

On examination, Mr. Howell had normal range of motion in his left and right shoulder, with no muscle weakness or atrophy. (Tr. 207) But Dr. Rao noted that Mr.

Howell's left ankle was tender, and that he walked with an antalgic gait favoring the left ankle. (Tr. 207-208) He was unable to perform a tandem walk, walk on his heel and toes, or squat and arise from a squatting position. (Tr. 208) Dr. Rao diagnosed Diabetes mellitus type II, hypertension, left ankle arthritis/gout, obesity, and chest pain. (Tr. 210)

Sudhir Kumar, M.D., examined Mr. Howell on behalf of the Commissioner on May 9, 2008. Mr. Howell reported swelling in his ankle, gout, chronic type II diabetes mellitus, right shoulder pain, hypertension, and hearing voices. (Tr. 293) On examination, Dr. Kumar found that the range of motion in Mr. Howell's right shoulder forward elevation was limited to 120 degrees; there was a nodule over the right shoulder with tenderness over the AC joint; and brawny edema was present in Mr. Howell's left ankle and calf. (Tr. 295-97) An x-ray taken of Mr. Howell's right shoulder revealed arthritis. (Tr. 299) Dr. Kumar diagnosed right shoulder pain with arthritis in the AC joint, type II diabetes mellitus, hypertension, history of recurrent gout, and diabetic retinopathy. (Tr. 297) He concluded that Mr. Howell's physical abilities were limited. (Tr. 297)

Dr. Conner treated Mr. Howell for shoulder, back, feet, and ankle pain on numerous occasions over the relevant period. (Tr. 212, 214-15, 231-33, 235, 286, 288-89, 337, 382-86) Based on his treatment of Mr. Howell, Dr. Conner recommended that he avoid lifting and that he elevate his legs during prolonged sitting. (Tr. 288-89)

The medical evidence contradicts the ALJ's conclusion that there is no medical evidence supporting Dr. Connor's diagnosis of gout, ankle pain, and pain and arthritis in Mr. Howell's right shoulder.

The ALJ's stated reasons for discrediting Mr. Howell's testimony are inadequate. He failed to consider all of the evidence, including Mr. Howell's testimony, his activities of daily living, as well as the medical evidence that contradicted his opinion. An ALJ may not ignore a claimant's subjective complaints solely because they are not supported by objective medical evidence. *Mouser v. Astrue*, 545 F.3d 634, 638 (8th Cir. 2008).

**IV. <u>Conclusion</u>:**

After considering the record as a whole, the Court concludes the decision of the Commissioner is not supported by substantial evidence. The Commissioner's decision is reversed, and this case is remanded for action consistent with this opinion. This is a "sentence four" remand within the meaning of 42 U.S.C. § 405(g) and *Melkonyan v. Sullivan*, 501 U.S. 89 (1991).

DATED this 17th day of July, 2012.

________________________________
UNITED STATES MAGISTRATE JUDGE